## A03A0201. COKER v. THE STATE.

(583 SE2d 498)

MILLER, Judge.

A jury found William Coker guilty of DUI and of driving with a suspended license. Coker was stopped by police while driving a golf cart on a public highway in Peachtree City. He appeals only the conviction for driving with a suspended license, arguing that (i) the evidence did not sustain the conviction, (ii) the court erred in instructing the jury that a driver's license was required to drive a golf cart on a public highway, and (iii) the court erred in declaring unconstitutional a Peachtree City municipal ordinance allowing unlicensed drivers to drive golf carts on public highways. We hold that a driver's license is required to drive a golf cart on public highways and therefore affirm the conviction.

Construed in favor of the verdict, the evidence showed that police witnessed Coker driving a golf cart on a public highway shortly after 1:00 a.m. They activated their car's blue lights and siren, and Coker immediately drove the cart onto a golf cart path that paralleled the highway. Coker eventually stopped and consented to field sobriety tests, which he failed. Coker had no driver's license, as it had been suspended. A breath test showed his blood alcohol level to be over 0.14. He was charged with obstructing law enforcement officers, two counts of DUI, and driving with a suspended license.

Coker moved to dismiss the suspended license charge, arguing that no license was required to drive a golf cart in Peachtree City. He pointed to a Peachtree City ordinance, which he claimed allowed 12- to 14-year-olds to drive golf carts on recreation paths and streets if accompanied by a licensed parent. The court held that OCGA § 40-5-20 (a) preempted the ordinance and required drivers of all motor vehicles, including golf carts, to have a driver's license when driving on public highways. The court instructed the jury of the requirement for a driver's license, and Coker was found guilty on one of the DUI charges and the driving with a suspended license charge. Coker moved for a new trial, which was denied. He appealed to the Supreme Court of Georgia, which transferred the appeal to this Court on the ground that no constitutional questions were raised or ruled on below. His appeal challenges the driving with a suspended license conviction only, arguing that the evidence was insufficient, that the jury charge regarding the need for a license to drive a golf cart was erroneous, and that the court erred in declaring the city ordinance unconstitutional.

1. Coker argues that the court erred in declaring the Peachtree City ordinance unconstitutional. We note, however, that the Supreme Court in its transfer order specifically determined that no constitutional questions were raised or ruled on in the trial court.

Since this determination is final and binding, we cannot consider Coker's constitutionality arguments. *Schmidt v. Feldman*, 230 Ga. App. 500, 502 (2) (497 SE2d 23) (1998); see *Hardeman v. State*, 247 Ga. App. 503 (1) (544 SE2d 481) (2001); *Hindman v. State*, 234 Ga. App. 758, 765 (5) (507 SE2d 862) (1998).

2. In his other two enumerations, Coker contends that he did not need a driver's license to drive a golf cart on a public highway. He argues that a golf cart is a motorized cart as defined in OCGA § 40-1-1 (32) and is not subject to the general requirement that the driver have a license. He explains that since motorized carts receive special treatment in OCGA §§ 40-6-330 and 40-6-331, which statutes do not expressly require a license for drivers of motorized carts, one can infer that the legislature, which in another statute (OCGA § 40-6-351) expressly required moped drivers to have a driver's license, did not intend to require motorized cart drivers to have a driver's license. He also notes that the Peachtree City ordinance did not require driver's licenses for golf cart drivers.

Coker's arguments lack merit. OCGA § 40-5-20 (a) provides that "[n]o person, except those expressly exempted in this chapter, shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license under this chapter for the type or class of vehicle being driven." There is no contention that Coker was exempted in Chapter 5 of Title 40. Since the golf cart was a device in which a person may be transported upon a highway, it was a "vehicle" under OCGA § 40-1-1 (75). Since it was self-propelled, it was a "motor vehicle" under OCGA § 40-1-1 (33). Cf. *Hinton v. Interstate Guaranty Ins. Co.*, 267 Ga. 516, 519-520 (480 SE2d 842) (1997) (tractor is interpreted as a motor vehicle under uninsured motorist statute). Since Coker drove it upon a highway of this State, he was required to have a driver's license. See 1969 Op. Atty. Gen. 69-194 (drivers of go-carts on public highways must have driver's license).

Although the golf cart may have qualified as a motorized cart under OCGA § 40-1-1 (32), nothing in the motorized cart statutes (OCGA §§ 40-6-330; 40-6-331) exempts the drivers of such from having a driver's license when driving on the public highways of this State. The fact that the nearby moped statute (OCGA § 40-6-351) reaffirms the need for a license for that type of motor vehicle does not lead to the conclusion that the motorized cart statutes exempted motorized cart drivers from the general licensing requirement of OCGA § 40-5-20 (a) for the drivers of "any motor vehicle." The motorized cart statutes authorize local governing authorities to license the motorized cart vehicle itself, not its driver (see OCGA § 40-6-331 (b)), and to establish the conditions under which the carts may be operated upon local streets. Such operating standards, which must be posted along the affected streets (OCGA § 40-6-331 (c)), obviously

refer to the manner in which such vehicles may be operated, not to whether the drivers of such must be licensed.

Thus, the court did not err in instructing the jury that the golf cart driver here was required to have a driver's license. The evidence showed that Coker was driving a type of motor vehicle upon a public highway, that his license was suspended, and that he had received notice of the suspension. Thus, the evidence sufficed to sustain the driving with a suspended license conviction. See *Keller v. State*, 247 Ga. App. 599, 601 (2) (544 SE2d 511) (2001).

*Judgment affirmed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED JUNE 13, 2003 — 

*Lloyd W. Walker*, for appellant.

*Steven L. Harris, Solicitor-General, Lura H. Landis, Assistant Solicitor-General*, for appellee.